Filed 7/19/21  P. v. Guillen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H046547, H046796 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1507980) |
| v. | |
| HARIBERTO GUILLEN, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Hariberto Guillen[1] was convicted by plea of making a false statement for the purpose of obtaining workers' compensation benefits (Ins. Code, § 1871.4, subd. (a)).  The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions in 2016.  At a subsequent restitution hearing, the trial court ordered defendant to pay more than $92,000 in restitution to his employer, Infinity Staffing.  Defendant successfully petitioned for a writ of habeas corpus, challenging the restitution order on the ground of ineffective assistance.

After a new restitution hearing in 2018, the trial court ordered defendant to pay his employer $31,451.33, which was comprised of $14,231.70 for workers' compensation

_____

[1] The record on appeal contains documents that also refer to defendant as "Heriberto Guillen."

benefits that the employer had previously paid to defendant; $10,914.88 for the employer's attorney's fees; and $6,304.75 for the employer's investigation costs. Subsequently, in 2019, before the expiration of defendant's three-year probation term, the court extended his probation to the maximum five-year term, until March 3, 2021, because defendant had not finished paying off the restitution.

In case No. H046547, defendant contends that the trial court erred in awarding victim restitution because the amounts awarded were not the result of, or reasonably attributable to, his false statement in the workers' compensation proceeding. In case No. H046796, defendant contends that the trial court erred in extending his probation to the five-year maximum.[2] He also argues that a new law, effective January 1, 2021, limits probation to two years, and that the new law applies retroactively to him.

In case No. H046547, we determine that the restitution award for workers' compensation benefits and attorney's fees is not factually supported by the record. We will therefore direct the trial court to amend the restitution order to reflect the amount of $6,304.75 for the employer's investigation costs only. In case No. H046796, we determine that the issues concerning the proper length of defendant's probation term are moot because his probation has expired, and therefore we will dismiss the appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *The Workers' Compensation Case*

For some period, defendant operated his own drywall business. He had 20 years of experience.

---

[2] On motion of the Attorney General, we ordered the two appeals considered together for the purposes of briefing, oral argument, and disposition.

[3] Some of the background facts are based on testimony and exhibits from the evidentiary hearing on defendant's habeas petition. Defendant provided the transcripts and exhibits from the evidentiary hearing on the habeas petition to the trial court in connection with the restitution hearing that resulted in the order at issue in the pending appeal.

In 2012, defendant was hired by Infinity Staffing, a "temp agency." On September 4, 2012, defendant sustained an injury as a maintenance worker raking sand at a golf course. According to defendant, although he initially had swelling in his hand and wrist, the pain "changed" to his shoulder and part of his neck. He submitted a workers' compensation claim. Defendant continued working for Infinity Staffing until he was laid off in July 2013. At the time of the layoff, Infinity Staffing offered defendant a position in Watsonville. Defendant, who was apparently living in San Jose, claimed the position was too far and did not accept it.

On May 22, 2014, the workers' compensation case proceeded to trial before a workers' compensation judge (WCJ). At the trial, defendant testified that he had not worked, for pay or for free, since his employment with Infinity Staffing ended in July 2013. He also testified that a drywalling job would be too difficult for him because it requires sacks of material to be carried, which would be too difficult because of his arm.

After defendant testified, Infinity Staffing disclosed that it had secretly taken a video of defendant the prior day on May 21, 2014. On that day, defendant used both hands to carry drywalling materials from his vehicle to a residence. There was a drywalling job at the residence, and defendant remained at the residence the whole day. Infinity Staffing sought to admit the video into evidence, and defendant objected.

The WCJ continued the trial, and the parties submitted briefing on the issue. The WCJ ultimately denied Infinity Staffing's motion to admit the video into evidence. The WCJ observed that Infinity Staffing was "not without [a] remedy," and that Infinity Staffing could refer the case "to the proper agency for investigation."

Infinity Staffing filed a petition for removal regarding the WCJ's ruling on the video. The WCJ filed a report and recommendation for the Workers' Compensation Appeals Board (WCAB) regarding the petition for removal. In the report, the WCJ explained that the "most pertinent issue" raised in the workers' compensation trial was whether defendant's injury arose out of his employment. The WCJ explained that the

3

video, which was taken the day before the trial, was not relevant because it did not show whether the injury occurred as alleged. The WCJ acknowledged that the video might be relevant to the issue of permanent disability if there was activity depicted on the video that was in excess of what defendant reportedly could tolerate, or in excess of what the agreed medical examiner (AME) allowed. The WCJ observed, however, that Infinity Staffing did not allege that the video depicted such activity. The WCJ also observed that defendant admitted that he had been looking for work since his last day with Infinity Staffing, and that the AME reported that defendant was functioning fairly well despite his shoulder injury. Thus, a video showing defendant "engaging in activity would not in any way be contrary to what ha[d] already been established by deposition and medical reporting." The WCJ determined that Infinity Staffing had not shown diligence in obtaining the video and had improperly delayed disclosure of the video. The WCJ further concluded that Infinity Staffing would not suffer significant prejudice or irreparable harm if the video was excluded. The WCAB adopted the reasons stated in the WCJ's report and denied Infinity Staffing's petition for removal.

The workers' compensation trial resumed and ultimately concluded in January 2015. In the written findings and award and opinion on decision, the WCJ determined that "unrebutted medical evidence" established that defendant suffered an injury to his right shoulder on September 4, 2012, and that there was "cumulative trauma" to his shoulder through his last day of work in July 2013, when he was laid off. The WCJ found that defendant was entitled to temporary disability indemnity beginning from the date that he was laid off while on work restrictions because Infinity Staffing failed to provide a reasonable offer of alternate work. Fifteen percent of the temporary disability award was to be paid to his workers' compensation attorney. The WCJ determined that defendant needed further medical care for his right shoulder, that his condition was not yet permanent and stationary, and that the issues of apportionment and permanent disability would be deferred.

4

The WCJ also granted a penalty pursuant to Labor Code section 5814,[4] which increased the temporary disability award and surgical consult cost by 25 percent. The WCJ further awarded attorney's fees to defendant's workers' compensation attorney as sanctions pursuant to Labor Code section 5813.[5] The penalty and sanctions were based on Infinity Staffing's bad faith actions and unreasonable delay of defendant's medical care. The WCJ found that Infinity Staffing continued to deny defendant's workers' compensation claim despite unrebutted medical evidence from the AME.

Infinity Staffing filed a petition for reconsideration regarding the WCJ's findings and award. The WCAB denied the petition.

## B. *Defendant's Conviction for Making a False Statement*[6]

In the meantime, in April 2015, defendant was charged by complaint with making a false statement for the purpose of obtaining workers' compensation benefits (Ins. Code, § 1871.4, subd. (a); count 1, a felony) and perjury (Pen. Code, § 118; count 2, a felony).[7]

Defendant pleaded no contest to making a false statement for the purpose of obtaining workers' compensation benefits (Ins. Code, § 1871.4, subd. (a); count 1), with the understanding that he would be placed on felony probation with various terms and

---

[4] Labor Code section 5814, subdivision (a) states: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the amount of the payment unreasonably delayed or refused shall be increased up to 25 percent or up to ten thousand dollars ($10,000), whichever is less. . . ."

[5] Labor Code section 5813, subdivision (a) states: "The workers' compensation referee or appeals board may order a party, the party's attorney, or both, to pay any reasonable expenses, including attorney's fees and costs, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ."

[6] Because the record in the current appeal is limited, on the court's own motion we take judicial notice of the record in defendant's prior appeal in this case (*People v. Guillen* (May 11, 2017, H043599) [app. dism. by nonpub. opn.]). Our recitation of the facts concerning defendant's conviction are taken from the record in the prior appeal.

[7] All further statutory references are to the Penal Code unless otherwise indicated.

conditions, including that he serve 45 days in jail, and that he would be ordered to pay restitution. The remaining perjury count was submitted for dismissal at the time of sentencing.

On March 3, 2016, the trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions. The remaining count was dismissed.

## C. *The First Restitution Order and the Habeas Petition*

At a restitution hearing held in May 2016, the trial court ordered defendant to pay $92,146.42 to his employer Infinity Staffing. Defendant filed a petition for writ of habeas corpus in this court challenging the restitution order on the ground of ineffective assistance of trial counsel. This court ordered the probation department to show cause before the trial court why defendant was not entitled to relief.

The trial court held an evidentiary hearing regarding defendant's habeas petition. The witnesses who testified at the evidentiary hearing included (1) the AME from defendant's workers' compensation case, (2) an attorney who testified as an expert in workers' compensation law, and (3) the WCJ assigned to defendant's workers' compensation case.

The AME testified that he had determined that defendant suffered a rotator cuff tear, and that defendant's description of pushing sand with a rake was consistent with the injury. Defendant had also reported to the AME that he had done drywall work in the past. The AME took that into consideration and apportioned 40 percent to preexisting injury.

The AME testified that he would not be able to determine how defendant's injury occurred without patient history obtained from defendant. For example, if defendant had told the AME that the injury occurred while playing baseball or lifting weights, then AME would have opined that defendant injured his shoulder playing baseball or lifting weights.

6

The AME later learned that defendant was convicted of a making a false statement. The AME reviewed the video recording upon which the conviction was based. The AME testified that the video did not change his prior conclusion in the workers' compensation case.

An attorney who was qualified as an expert in workers' compensation law testified at the evidentiary hearing on defendant's habeas petition  The expert explained that, rather than paying temporary disability, an employer may provide modified or alternative work to the injured worker if a doctor provides a release for such work. It is expected that the injured worker will do the modified work and not receive temporary disability, but the work has to be within a reasonable distance.

The WCJ who was assigned to defendant's workers' compensation case testified that the employer contested several issues at the workers' compensation trial, including whether the injury arose out of employment and whether there was temporary disability. Regarding the finding of temporary disability, the WCJ explained that "[t]emporary disability is paid to an injured worker when they have an inability to work due to the effects of the injury and the employer is not able to offer modified work."

Regarding the Labor Code penalty and sanction imposed by the WCJ, the penalty was for delay by the insurance company. The WCJ explained that the parties had an AME who determined that the injury occurred, and that the injury was consistent with the reported mechanism of injury.  Liability should have been accepted after the AME rendered the opinion, but Infinity Staffing and its insurance company continued to deny liability at trial even though they had no evidence to the contrary. The WCJ found that to be unreasonable and awarded a 25 percent penalty on the delayed temporary disability and delayed medical treatment. The WCJ also imposed monetary sanctions, which included attorney's fees, on Infinity Staffing for bad faith based on this conduct. The WCJ "[v]ery rarely" ordered sanctions, having done so "probably less than a dozen times in the last 16 years."

7

The WCJ explained that Infinity Staffing had the right to take the video of defendant and to use it at trial, so long as it was properly disclosed. The WCJ indicated that the employer should have disclosed the video sooner on May 22 and, "depending on the contents of that video, it would have been appropriate to have [the AME] look at that video, to see if it would have changed any of his opinions." The WCJ explained that "[w]e cannot have exhaustive good faith settlement discussions in order to begin trial when you haven't disclosed all of your evidence." Because Infinity Staffing did not follow the proper procedure and committed a discovery violation, the video was ruled inadmissible. As the video was ruled inadmissible, the WCJ never watched the video. The WCJ testified that she told the employer that one remedy was to go to the district attorney with the video, and that she also included that suggestion in her written decision.

The WCJ was asked at the evidentiary hearing whether she would have found "bad faith trial tactics" by defendant if she had learned at the workers' compensation proceeding after he testified that he had done drywall work the day before. The WCJ testified, "If I had found out on the 22nd that the injured worker . . . had been working, *it would not have changed any of my rulings, other than the* [*employer*] *would have been entitled to a credit for any wages he had earned as against their liability to pay temporary disabilit*y. *Nothing else would have changed*." (Italics added.) The WCJ further explained, "What he did testify to is that he had an ability to work, a willingness to work, and had been looking for work. It would not have surprised me at all that there had been testimony that said he had actually worked, if that information had been brought before me. *That's why it wouldn't really have changed the outcome*." (Italics added.) The WCJ explained that "[i]t does not negate the fact that the injury occurred and that he may have permanent residual disability as a result of that injury. [¶] So only a portion of his benefits are impacted, if there is, in fact, a finding of either insurance fraud or perjury."

When asked generally whether a worker who falsely testifies at workers' compensation proceeding could be subject to a finding of bad faith litigation, the WCJ testified, "Normally, what that does is that we deny the thing that's being requested. If it affects the credibility, I can give the injured worker a take nothing, meaning that I'm denying any recovery in his case, or deny that particular benefit which he is requesting. [¶] I have never . . . ever sanctioned an injured worker for bad faith litigation. That's usually something the attorneys control."

At the conclusion of the evidentiary hearing, the trial court granted defendant's petition for writ of habeas corpus, set aside the restitution order, and ordered a new restitution hearing.

**D.** *The Second Restitution Order*

In a July 2018 supplemental memorandum, the probation officer indicated that Infinity Staffing was seeking "an updated restitution amount" of $31,451.33, which was based on (1) $14,231.70 for temporary total disability since May 23, 2014; (2) $10,914.88 in attorney's fees since May 23, 2014; and (3) $6,304.75 in other payments during the duration of the workers' compensation claim.

Defendant filed written opposition to the restitution request, contending that the amount sought by Infinity Staffing was not caused by his conduct pursuant to section 1202.4, nor was the amount reasonably related to his offense pursuant to section 1203.1. First, regarding restitution for temporary total disability that Infinity Staffing had paid defendant, defendant contended that the WCJ indicated that his offense was not relevant or material to the finding of temporary total disability. Second, regarding attorney's fees, defendant argued that the fees were not reasonably related to his offense because the fees were for his own workers' compensation attorney, which Infinity Staffing was required to pay by statute, that the fees had been increased by the WCJ as a sanction for Infinity Staffing's bad faith litigation, and that Infinity Staffing incurred fees after rejecting its own attorney's advice to settle the workers' compensation

9

claim.  Third, regarding the remaining costs for investigation, defendant contended that Infinity Staffing violated workers' compensation procedures by failing to disclose the secret video earlier, and that his offense was not related to Infinity Staffing's unreasonable investigation.

The prosecutor filed a memorandum in support of restitution.  The prosecutor explained that Infinity Staffing had hired a surveillance company to follow defendant, because it suspected that his injury may have occurred when he was doing drywall work "on the side," or that he was currently doing drywall work and therefore was not as disabled as he claimed.  Infinity Staffing sought restitution for temporary total disability and attorney's fees "from the date of the crime to the present," as well as investigation costs for obtaining the secret video.  The prosecutor contended that Infinity Staffing was entitled to restitution for all three categories of expenses.  First, regarding temporary total disability, the prosecutor contended that Infinity Staffing was required to pay such amounts after the date of defendant's false testimony, and that "[t]hese are costs that are directly caused by defendant's criminal conduct.  Had defendant told the truth about his actions that day" the WCJ could have assessed whether defendant remained disabled and whether temporary total disability payments should continue.  According to the prosecutor, defendant would "not have been entitled to temporary total disability . . . after that date because the video demonstrated that he could do some work."  Second, regarding attorney's fees, the prosecutor argued that restitution was authorized under section 1202.4, subdivision (f)(3)(H).  The prosecutor contended that defendant "never followed up with treatment in the [worker's compensation] system, presumably to avoid further incriminating himself.  Thus, litigation in the [workers' compensation] matter has lingered on, causing the victim to incur additional litigation costs," and that defendant was responsible for the loss.  Third, regarding investigation costs, the prosecutor contended that such costs were authorized by Insurance Code section 1871.4,

10

subdivision (a), and that there was no requirement that the video be used at the workers' compensation hearing.

The new restitution hearing was held on September 24, 2018. At the hearing, defendant made an offer of proof regarding witnesses that he sought to have testify regarding various topics, including regarding Infinity Staffing's denial of his workers' compensation claim and refusal to settle.

The trial court indicated that the entire amount requested by Infinity Staffing for restitution was appropriate. The trial court observed that defendant's argument was that if Infinity Staffing had properly settled his workers' compensation claim earlier, then the subsequent workers' compensation proceeding in which he made the false statement would not have occurred. The court indicated that the issue of whether the workers' compensation claim should have been settled earlier was not relevant to the issue of restitution. The court explained that "the false statement by [defendant] is a superseding intervening cause which, even if the claim should have been settled earlier, does not excuse that conduct and does not excuse restitution incurred for that time of the comment forward." The court thus determined that "from the time of the false statement forward," defendant was responsible for restitution, but that he was "not responsible . . . for anything that was paid before the statement was made because the evidence showed that there was a legitimate injury that should have been compensated and was compensated." Regarding restitution for costs "from the time of the false statement forward," the trial court indicated that defendant would be responsible for the total restitution requested by Infinity Staffing in the amount of $31,451.33. The court continued the matter for a further hearing to give defendant time to review the underlying invoices that had yet to be produced by Infinity Staffing.

Defendant filed a supplemental brief contending that Infinity Staffing failed to meet its burden of establishing that it was entitled to restitution under section 1203.1 or 1202.4. Defendant also requested that the trial court reconsider its tentative ruling

11

awarding restitution. Regarding temporary total disability indemnity, defendant contended that the WCJ testified that defendant's conduct did not affect the determination of temporary total disability indemnity, and that the AME testified that defendant's conduct did not affect the AME's medical opinion. Consequently, defendant should not be required to pay back the temporary total disability indemnity. Regarding attorney's fees, defendant contended that there was no evidence "to establish the nature of the services" or whether "the services were reasonably priced." Moreover, Infinity Staffing's further litigation in the workers' compensation case after defendant's offense was not related to his offense. Regarding investigation costs, defendant contended that he did not cause Infinity Staffing's investigation costs, nor were the costs reasonably related to his offense.

The continued restitution hearing was held on November 30, 2018. Defendant contended that restitution should not be awarded for the temporary total disability payments. He argued that those payments pertained to matters "that had nothing to with [his] offense," and that due to the imposition sanctions in the workers' compensation proceeding the payments had been increased by 25 percent. Defendant also contended that the attorney's fees[8] and investigation costs were not reasonably related to his offense.

The prosecutor contended that the goal of restitution was to "make the victim whole" and that the court could "rely on anything relevant to rehabilitation of the defendant."

The trial court stated, "[W]e have a unique situation here where there was an injury. There was payment for that injury, and then at some point, there is the crime and

---

[8] Based on statements made at the hearing, it appears defendant's counsel was provided with a written breakdown of Infinity Staffing's attorney's fees by hours worked and tasks performed. The record on appeal does not contain the written breakdown of Infinity Staffing's attorney's fees.

then costs associated with that part of it. It's dissecting those two things that I would like some assistance with."

The prosecutor contended that under Insurance Code section 1871.4, a trial court may order investigation costs, which would include the surveillance video in this case. The prosecutor argued that the investigation costs were "caused by the defendant's conduct and would be important for the rehabilitative purpose that probation is supposed to effect." Regarding temporary total disability payments and the attorney's fees being requested as restitution, the prosecutor contended that the amounts occurred after the date of defendant's crime. The prosecutor argued that defendant's "lie[] about what he was doing that day . . . prohibited the court from being able to evaluate whether or not he continued to be temporary disabled."

The trial court questioned whether the approximately $14,000 requested for temporary total disability were for payments made after defendant's false statement. The court expressed its understanding, based on information provided by the parties, that the total amount paid for temporary total disability was $24,914.26 covering a two-year period beginning July 23, 2013. The court observed that the offense occurred on May 21, 2014, which was "just about in the middle" of the two-year period. However, the temporary total disability "award wasn't made until later" and was retroactive.

The trial court proceeded to rule as follows: "[W]hat I'm looking at is some unknowns, which is that [defendant] clearly was entitled to some disability payment for what everyone agrees was an injury. [¶] How much [of] that amount was affected by the testimony of May 21st?[9] Would it have been awarded the same? Differently? There isn't, I think, a clear way to know that. [¶] Based on that and based on the fact that the

---

[9] The secret video of defendant was taken on May 21. Defendant provided false testimony at the workers' compensation trial the following day, on May 22. Given that the trial court repeatedly referred to defendant's "testimony" as the date at issue, we assume the trial court was referring to May 22.

award period does both, precede and go beyond the date of incident, I think that the number submitted by the victim in this case appears to be an accurate assessment of the amount of moneys paid after the incident in the testimony in this case. [¶] It is approximately half of the total award, and given the dates that we're talking about, I think it is a reasonable and fair estimate of what was attributable to the false statement. [¶] So the court is going to order restitution in the total amount of $31,451.33. That is broken down . . . as $14,231.70 of [temporary total disability indemnity]; $10,914.88 of attorney's fees; and $6,304.75 of investigation."

### E. *The Extension of Probation*

Thereafter, in 2019, near the end of defendant's three-year probation term, the probation department apparently requested that the trial court extend defendant's probation because he had not paid off the victim restitution. Defendant filed written objections to the request. At a hearing on February 27, 2019, the court granted the probation department's request and extended defendant's probation to the maximum term of five years, until March 3, 2021.

## III. DISCUSSION

In case No. H046547, defendant contends that the trial court erred in awarding restitution for temporary total disability payments, attorney's fees, and investigation costs because those amounts were not caused by his false statement. He also argues that the restitution award cannot be justified as a reasonable condition of probation under section 1203.1. Defendant further contends that the trial court erred in refusing to admit testimony from various witnesses, and that he is entitled to a jury trial regarding the amount of Infinity Staffing's loss.

In case No. H046796, defendant contends that the trial court erred in extending his probation to the five-year maximum. He also argues that a new law, effective January 1, 2021, limits probation to two years, and that the new law applies retroactively to him.

14

We first consider the restitution award before turning to the issue of the length of defendant's probation term.

**A.** *General Rules Regarding Restitution*

Section 1202.4 declares "the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (*Id.*, subd. (a)(1).) Restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id.,* subd. (f)(3); see *id.* subd. (f); *People v. Martinez* (2017) 2 Cal.5th 1093, 1101 (*Martinez*) [§ 1202.4 authorizes victim restitution for "losses incurred as a result of the crime of which the defendant was convicted"].) A defendant's inability to pay may not be considered in determining the amount of a restitution order. (§ 1202.4, subd. (g).) An order for victim restitution is "enforceable as if the order were a civil judgment." (*Id.*, subds. (a)(3)(B) & (i).)

**B.** *Restitution in Probation Cases*

Section 1202.4, which we have set forth above, requires victim restitution without regard to whether probation is granted. (*People v. Giordano* (2007) 42 Cal.4th 644, 653 (*Giordano*).) By comparison, in probation cases, "section 1203.1 requires trial courts to 'consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund,' and requires the court to 'provide for restitution in proper cases.' (Pen. Code, § 1203.1, subds. (b) & (a)(3).)" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121, fn. omitted (*Carbajal*).) Section 1203.1 generally provides that a trial court may impose on probationers "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the

15

probationer . . . ." (*Id.*, subd. (j).)  A restitution order in a probation case is "fully enforceable as a civil judgment . . . ." (*Id.*, subd. (a)(3); see § 1202.4, subd. (m).)

"A trial court's power to order restitution in probation cases is . . . broader than its power to order direct victim restitution under section 1202.4 in cases in which the defendant receives a nonprobationary sentence.  [Citation.]" (*Martinez*, *supra*, 2 Cal.5th at pp. 1101-1102; accord, *People v. Anderson* (2010) 50 Cal.4th 19, 29 (*Anderson*) [trial court has "authority to impose restitution as a condition of probation in circumstances not otherwise dictated by section 1202.4"].)  As the California Supreme Court has explained, " '[i]n granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety,' including the power to 'regulate conduct "not itself criminal" ' but ' "reasonably related to the crime of which the defendant was convicted or to future criminality." ' [Citations.]  This discretion . . . has long been held to include the power to order restitution 'even when the loss was not necessarily caused by the criminal conduct underlying the conviction,' including in cases in which 'the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation].' [Citation.]" (*Martinez*, *supra*, 2 Cal.5th at p. 1101.)  Indeed, " '[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.  [Citation.]' [Citation.]" (*Anderson*, *supra*, 50 Cal.4th at p. 27.)

"The lack of a precise fit between the costs of the crime and the amount of restitution ordered does not render the restitution order invalid, if it serves a purpose described in Penal Code section 1203.1." (*Carbajal*, *supra*, 10 Cal.4th at p. 1124.)  "While restitution under section 1203.1 may serve to compensate the victim of a crime, it also addresses the broader probationary goal of rehabilitating the defendant.  ' "Restitution is an effective rehabilitative penalty because it forces the defendant to

16

confront, in concrete terms, the harm his [or her] actions have caused." ' [Citation.] Restitution 'impresses upon the offender the gravity of the harm he [or she] has inflicted upon another, and provides an opportunity to make amends.' [Citation.]" (*Anderson*, *supra*, 50 Cal.4th at p. 27.)

## C. *Restitution in Workers' Compensation Fraud Cases*

Defendant was convicted of violating Insurance Code section 1871.4, subdivision (a), which makes it unlawful to, among other conduct, make a "knowingly false or fraudulent material statement or material representation for the purpose of obtaining" workers' compensation. (*Id.*, subd. (a)(1).) "Materiality of the false statement is an element of the offense described in [Insurance Code] section 1871.4, subdivision (a)(1)." (*People v. Gillard* (1997) 57 Cal.App.4th 136, 151.) "[T]he misrepresentation is material if it can influence the determination, even though it does not." (*Id.* at p. 158.)

If a defendant violates Insurance Code section 1871.4, then under subdivision (b), "[r]estitution shall be ordered, including restitution for any medical evaluation or treatment services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid. A person convicted under this section may be charged the costs of investigation at the discretion of the court."

## D. *The Standard of Review*

"Restitution orders may not be based merely upon the trial court's subjective belief regarding the appropriate compensation; there must be a factual and rational basis for the amount ordered . . . ." (*Carbajal*, *supra*, 10 Cal.4th at p. 1125.) A trial court's restitution order is reviewed for abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663.) The abuse of discretion standard " 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.]" (*Ibid*.) A trial court "violates this standard when its

determination is arbitrary or capricious or ' " 'exceeds the bounds of reason, all of the circumstances being considered.' " [Citations.]' [Citation.]" (*Carbajal*, *supra*, at p. 1121.)

### E. *Analysis*

### 1. Restitution (case No. H046547)

### a. temporary total disability payments

The trial court's restitution award includes $14,231.70 for Infinity Staffing's temporary total disability payments to defendant for a period after his false testimony at the workers' compensation trial. On appeal, defendant contends that the restitution award for temporary total disability payments was not proper under section 1202.4, which authorizes victim restitution for an economic loss suffered "as a result of" the defendant's criminal conduct (*id.*, subds. (a)(1) & (f)(3)), or under section 1203.1, which applies to restitution in probation cases. We understand defendant to also contend that the statutory requirements for restitution under section 1202.4 (economic loss "as a result of" the defendant's criminal conduct) are similar to the statutory requirements under Insurance Code section 1871.5, which limits eligibility for workers' compensation upon a conviction for workers' compensation fraud.[10]

We understand the Attorney General to contend that the restitution award in this case is governed by the requirements applicable to probation cases, not prison cases, and that the entire restitution award in this case was within the trial court's discretion and

---

[10] Insurance Code section 1871.5 states that "[a]ny person convicted of workers' compensation fraud pursuant to [Insurance Code] [s]ection 1871.4 . . . shall be ineligible to receive or retain any [workers'] compensation . . . where that compensation was owed or received as a result of a violation of Section 1871.4 . . . for which the recipient of the compensation was convicted." In other words, "the convicted worker is barred from receiving further compensation directly stemming from the fraud," but "the employee is entitled to continue to receive the benefits which were not part of the fraud." (*Farmers Ins. Group of Companies v. Workers' Comp. Appeals Bd*. (2002) 104 Cal.App.4th 684, 690, 691; see *Tensfeldt v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 116, 124; *Pearson Ford v. Workers' Comp. Appeals Bd*. (2017) 16 Cal.App.5th 889, 898.)

18

supported by the evidence. We agree with the Attorney General that the requirements for restitution in probation cases, not prison cases, applies in this case, and therefore we turn to the issue of whether the restitution award was proper under section 1203.1.

As an initial matter, we reject defendant's suggestion that section 1203.1 may not provide a basis for the trial court's restitution order. We understand defendant to contend that, because the prosecutor and the trial court never expressly cited section 1203.1, and because the trial court awarded restitution for specific categories of costs (disability payments, attorney's fees, and investigation costs), the court did not rely on section 1203.1 in making the restitution order. However, defendant acknowledges that he cited section 1203.1 several times in his briefing below in opposition to restitution. The issue was therefore presented to the trial court. Moreover, as we have explained, "section 1203.1 *requires* trial courts to 'consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund,' and *requires* the court to 'provide for restitution in proper cases.' (Pen. Code, § 1203.1, subds. (b) & (a)(3).)" (*Carbajal*, *supra*, 10 Cal.4th at p. 1121, fn. omitted, italics added.) It appears the trial court acted under the authority of section 1203.1 in this case, given that the court placed defendant on probation and ordered him to pay victim restitution.

Turning to the question of whether restitution was properly awarded to Infinity Staffing for temporary total disability payments, the trial court acknowledged that *defendant* "clearly was entitled to some disability payment for what everyone agrees was an injury." The court admitted, however, that it was unable to determine that amount. In this regard, the court stated, "How much [of] that amount was affected by the testimony of May 21st? Would it have been awarded the same? Differently? There isn't, I think, a clear way to know that." The court further stated, "Based on that and based on the fact that the award period does both, precede and go beyond the date of incident, I think that the number submitted by the victim in this case appears to be an accurate assessment of the amount of moneys paid after the incident in the testimony in this case. [¶] It is

19

approximately half of the total award, and given the dates that we're talking about, I think it is a reasonable and fair estimate of what was attributable to the false statement."

Based on the trial court's statements and the record in this case, we determine that the restitution award for $14,231.70 for temporary total disability payments was not supported by a factual basis. In this regard, we are not persuaded by the Attorney General's contention that the trial court's use of the date of defendant's false statement provided "an approximation of those insurance payments that were tainted by the false statement." Our determination is based on the following review of the record.

Regarding temporary disability payments, the WCJ explained that "[t]emporary disability is paid to an injured worker when they have an inability to work due to the effects of the injury and the employer is not able to offer modified work." The WCJ awarded defendant temporary disability indemnity beginning from the date that he was laid off while on work restrictions because Infinity Staffing failed to provide a reasonable offer of alternate work.

The WCJ testified, "If I had found out on the 22nd that the injured worker . . . had been working, it would not have changed any of my rulings, other than the [employer] would have been entitled to a credit for any wages he had earned as against their liability to pay temporary disability. Nothing else would have changed." The WCJ further explained, "What he did testify to is that he had an ability to work, a willingness to work, and had been looking for work. It would not have surprised me at all that there had been testimony that said he had actually worked, if that information had been brought before me. That's why it wouldn't really have changed the outcome." The WCJ explained that "[i]t does not negate the fact that the injury occurred and that he may have permanent residual disability as a result of that injury."

The WCJ acknowledged that the video might be relevant to the issue of *permanent disability if* there was activity depicted on the video that was in excess of what defendant reportedly could tolerate, or in excess of what the AME allowed. The WCJ observed,

20

however, that Infinity Staffing did *not* allege that the video depicted such activity. The WCJ further observed that defendant admitted that he had been looking for work since his last day with Infinity Staffing, and that the AME reported that defendant was functioning fairly well despite his shoulder injury. Thus, a video showing defendant "engaging in activity would not in any way be contrary to what ha[d] already been established by deposition and medical reporting." Indeed, the AME, who watched the video, testified that the video did not change his prior conclusion in the workers' compensation case.

At the restitution hearing, the trial court acknowledged that defendant was entitled to retain workers' compensation benefits that were not obtained by fraud. The court also acknowledged that it was unable to determine the amount based on the record. Under these circumstances, the court's selection of the date of the misstatement as the point after which *all* benefits must be repaid is not supported by the record. (See *Carbajal*, *supra*, 10 Cal.4th at pp. 1121, 1125.) We will therefore amend the restitution award to eliminate $14,231.70 for temporary total disability payments.

### b. attorney's fees

The restitution order includes $10,914.88 for attorney's fees incurred by Infinity Staffing after defendant's false testimony in the workers' compensation case. On appeal, defendant contends that the restitution award for attorney's fees was not proper under section 1202.4, which authorizes victim restitution for an economic loss suffered "as a result of" the defendant's criminal conduct (*id.*, subds. (a)(1) & (f)(3)), or under section 1203.1, which applies to restitution in probation cases. Defendant also contends that the trial court erred in refusing to allow two witnesses to testify at the restitution hearing regarding Infinity Staffing's litigation of his workers' compensation claim.

Below, the prosecutor cited section 1202.4, subdivision (f)(3)(H) in support of the request for restitution for Infinity Staffing's attorney's fees incurred after defendant's false statement at the workers' compensation trial. Section 1202.4, subdivision (f)(3)

21

states that, "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred *as the result of* the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (*Id*., subd. (f)(3)(H), italics added.)

Here, the record does not reflect that the attorney's fees sought by Infinity Staffing and awarded by the trial court in restitution were incurred "as the result of" defendant's false statement at the workers' compensation trial. (§ 1202.4, subd. (f)(3).) Rather, it appears the trial court simply selected the date of defendant's misstatement as the point after which he was responsible for all of Infinity Staffing's attorney's fees. As we have explained regarding the restitution award for temporary total disability payments, the trial court acknowledged that it was unable to determine to what extent defendant's fraud had affected his workers' compensation benefits and therefore the trial court's use of the date of the misstatement as the determinative point for restitution was without a factual basis. The use of the date of the misstatement for the award of attorney's fees similarly appears without a factual basis whether considered under section 1202.4 or 1203.1. (See *Carbajal*, *supra*, 10 Cal.4th at pp. 1121, 1125.) We will therefore amend the restitution award to eliminate $10,914.88 for attorney's fees.

In view of our conclusion that the restitution award improperly includes attorney's fees, we do not reach defendant's contention that the trial court erred in refusing to allow testimony by two witnesses at the restitution hearing.

### c. investigation costs

The trial court's restitution award includes $6,304.75 for Infinity Staffing's investigation costs, which related to obtaining the secret video. On appeal, we understand defendant to contend that Infinity Staffing is not entitled to restitution for investigation costs because it was improper for Infinity Staffing to obtain the video in the

22

first place, and because the WCJ ultimately refused to admit the video into evidence at the workers' compensation trial.

Under Insurance Code section 1871.4, a defendant convicted of making a false statement for the purpose of obtaining workers' compensation "may be charged the costs of investigation at the discretion of the court." (*Id.*, subd. (b).) In this case, notwithstanding the WCJ's refusal to admit the secret video into evidence at the workers' compensation trial, the WCJ acknowledged that Infinity Staffing had the right to take the video of defendant and to use it at trial, so long as it was properly disclosed. The WCJ indicated that the employer should have disclosed the video sooner on May 22 and, "depending on the contents of that video, it would have been appropriate to have [the AME] look at that video, to see if it would have changed any of his opinions." Because Infinity Staffing did not follow the proper procedure and committed a discovery violation, the video was ruled inadmissible. Nonetheless, the WCJ testified that one of the employer's remedies was to go to the district attorney with the video. On appeal, defendant acknowledges that "the surveillance here was . . . undertaken in order to create the false statement which was the basis of the Insurance Code section 1871.4 violation." Because the secret video formed the basis for defendant's conviction under Insurance Code section 1871.4, we determine that the trial court did not abuse its discretion in ordering restitution for the costs of the investigation which resulted in the video. (*Id.*, subd. (b).)

In support of his argument that investigation costs were improperly awarded as restitution in this case, defendant cites *People v. Amin* (2000) 85 Cal.App.4th 58 (*Amin*). We do not find the case helpful. In *Amin*, the defendant did "not directly challenge" the trial court's authority to order restitution for investigation costs. (*Id.* at p. 63, fn. 2.)

Accordingly, we conclude that the trial court properly awarded restitution for Infinity Staffing's investigation costs.

### d. jury trial

Defendant contends that he is entitled to a jury trial regarding restitution. He admits that he did not raise the issue below. The Attorney General does not address the issue of forfeiture or whether defendant is entitled to a jury trial regarding restitution.

" '[R]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' [Citations.]" (*People v. Brooks* (2017) 3 Cal.5th 1, 92.) Defendant points out that the Courts of Appeal have held that there is no right to a jury trial regarding restitution. The trial court in this case would have therefore been bound to reject his argument. Defendant may properly raise the claim in this court. (See *ibid.*)

Regarding the substance of defendant's claim, he primarily relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*), and *Southern Union Co. v. United States* (2012) 567 U.S. 343 (*Southern Union*). In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, at p. 490.) In *Blakely*, the United States Supreme Court explained that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts," but "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Blakely*, *supra*, at pp. 303-304, italics omitted.) In *Southern Union*, the United States Supreme Court applied this rule – that a jury must determine "any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum potential sentence" – to criminal fines. (*Southern Union*, *supra*, at p. 346; see *id.* at p. 349 [explaining that "[c]riminal fines, like . . . other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses"].)

24

However, as explained by the appellate court in *People v. Pangan* (2013) 213 Cal.App.4th 574 (*Pangan*), "neither *Southern Union*, *Apprendi* nor *Blakely* have any application to direct victim restitution, because direct victim restitution is not a criminal penalty. . . . [D]irect victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits. It is not increased 'punishment.' " (*Id.* at p. 585.) The appellate court in *Pangan* ultimately concluded that the defendant was not entitled to a jury trial regarding victim restitution. (*Id.* at pp. 576, 586.) Other appellate court decisions have reached the same conclusion that there is no right to a jury trial regarding victim restitution. (See, e.g., *People v. Millard* (2009) 175 Cal.App.4th 7, 35-36 (*Millard*); *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1183-1184; *People v. Wasbotten* (2014) 225 Cal.App.4th 306, 308-309; *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1397-1399.)

Defendant argues that victim restitution is "part of a defendant's punishment," and that restitution hearings are a part of the sentencing hearing. However, as explained in *Millard*, *supra*, 175 Cal.App.4th 7, "the primary purpose of a victim restitution hearing is to allow the People to prosecute an expedited hearing before a trial court to provide a victim with a civil remedy for economic losses suffered, and not to punish the defendant for his or her crime. To the extent a victim restitution order has the secondary purposes of rehabilitation of a defendant and/or deterrence of the defendant and others from committing future crimes, those purposes do not constitute increased punishment of the defendant . . . ." (*Id.* at pp. 35-36.)

Defendant also cites to Justice Gorsuch's dissent (joined by Justice Sotomayor) from the United States Supreme Court's denial of certiorari in *Hester v. United States* (2019) ___U.S.___ [139 S.Ct. 509]. Justice Gorsuch stated that, "just as a jury must find any facts necessary to authorize a steeper prison sentence or fine, it would seem to follow that a jury must find any facts necessary to support a (nonzero) restitution order." (*Id.* at p. 510 (dis. opn. of Gorsuch, J.) [dissenting from denial of certiorari]; but see *Oregon v.*

25

*Ice* (2009) 555 U.S. 160, 171-172 (*Ice*) [referring to restitution and other orders in which trial judges make factual findings, and stating that "[i]ntruding *Apprendi*'s rule into these decisions on sentencing choices or accoutrements surely would cut the rule loose from its moorings"]; *Southern Union*, *supra*, 567 U.S. at p. 352, fn. 5 [explaining that the statement in *Ice* regarding imperiling sentencing decisions that judges commonly make was dicta].) However, "statements accompanying denials of certiorari have no binding or precedential value." (*In re I.F.* (2018) 20 Cal.App.5th 735, 764.)

Lastly, defendant contends that "[e]ven if restitution were civil, [he] has a constitutional right to a jury trial under the California Constitution to determine the amount of the loss. (Cal. Const. Art. I, § 16.)"

We are not persuaded by defendant's contention. Although "the restitution order and the civil jury award produce the same result (an enforceable judgment against the defendant [citation]), they are a different means to that end, one based in the civil law, with its protections and requirements, and the other in criminal law, with its own protections and requirements. The restitution hearing . . . is a criminal sentencing hearing, not a civil trial." (*People v. Smith* (2011) 198 Cal. App. 4th 415, 434.)

Further, the California Constitution generally provides that "[t]rial by jury is an inviolate right and shall be secured to all . . . ." (Cal. Const., art. I, § 16.) Regarding civil trials, "[g]enerally, 'if the action is essentially one in equity and the relief sought "depends upon the application of equitable doctrines," the parties are *not* entitled to a jury trial.' [Citation.]" (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 121, italics added.) Generally, restitution is a remedy available in an equitable action (see *People v. Superior Court* (1973) 9 Cal.3d 283, 286), to which there is no right to a jury trial. Defendant fails to provide legal authority that persuasively establishes the right to a jury trial for victim restitution in this case. (See *People v. Rivera* (1989) 212 Cal.App.3d 1153, 1159-1161 [rejecting the contention that a defendant has the right to a jury trial on the issue of restitution under Cal. Const., art. I, § 16].)

26

Accordingly, we determine that defendant is not entitled to a new restitution hearing before a jury.

## 2. Extension of probation (case No. H046796)

In case No. H046796, defendant contends that the trial court erred in extending his probation to the five-year maximum. He also argues that a new law, effective January 1, 2021, limits probation to two years, and that the new law applies retroactively to him. (See § 1203.1, subd. (a).)

This court requested supplemental briefing from the parties regarding whether defendant was still on active probation and, if he was not, whether his appeal challenging the length of his probation should be dismissed as moot. Both parties agree that the appeal is moot because defendant is no longer on probation. Defendant, however, requests that this court exercise its discretion and reach the merits of his contentions because the issues are likely to recur, may evade appellate review, and are of continuing public interest. The Attorney General contends that the appeal should be dismissed as moot.

" 'An action that involves only abstract or academic questions of law cannot be maintained. [Citation.] And an action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198; see also *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [if no effectual relief can be granted, an appeal will be dismissed as moot].) However, an appellate court has the discretion to decide an issue that is technically moot if "the issue is likely to recur, might otherwise evade appellate review, and is of continuing public interest. [Citation.]" (*People v. Morales* (2016) 63 Cal.4th 399, 409.)

27

We decline to exercise our discretion to address the issues surrounding the length of defendant's probation. Existing caselaw provides the framework for the issues raised by defendant. For example, as defendant acknowledges, *People v. Cookson* (1991) 54 Cal.3d 1091, which addresses the issue of unpaid restitution and the extension of probation, controls in this case. Regarding the application and retroactivity of the new amendment to section 1203.1, subdivision (a) limiting probation to two years, the Attorney General points out that several appellate court decisions have already addressed the issue. (See, e.g., *People v. Sims* (2021) 59 Cal.App.5th 943, 947; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879.)

Accordingly, the appeal in case No. H046796 is dismissed as moot.

## IV. DISPOSITION

In case No. H046547, the victim restitution order is reversed, and the trial court is directed to amend the restitution order to reflect the amount of $6,304.75 for investigation costs only.

In case No. H046796, the appeal is dismissed as moot.

28

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
DANNER, J.

*People v. Guillen*
**H046547**
**H046796**